Joseph A. Cox, S.
This opinion is concerned with two proceedings. One, which is an application to compel the executor to deliver personal property, is met with a claim that the property has passed to the executor as a specific legatee pursuant to the terms of the will. The second proceeding, instituted by the executor, is to construe the will.
Ronald Ginsburg, the nephew of the decedent, was the beneficiary of certain Totten Trust bank accounts, some insurance policies and United States bonds payable on death to him or payable to him as surviving joint tenant. The nephew makes this application to compel delivery of such property to him. The executor Nathan Ginsburg is a brother of the testator and he relies upon the provisions of the will under which the testator, a dentist, bequeathed to Nathan Ginsburg, also a dentist, “ the dental instruments, furniture, fixtures, supplies and equipment of every nature and description in my dental offices ”, “ the entire contents of the safe in my offices ” and the “ entire contents of my safe deposit box ”. The will also provides several general legacies payable to named relatives and bequeaths the residuary estate to another brother Joseph.
A stipulation of facts has been submitted and it appears that, at the date of the testator’s death, the passbooks, bonds and *588 insurance policies were either in the safe at the office or in the safe-deposit box at the bank. The decedent’s apartment and office were combined and consisted of six rooms: an operating room, a laboratory and a reception room, constituting the dental office, and three rooms which were used for dwelling purposes. The professional rooms and the living quarters were connected by a common hallway in which were some objects of art of indefinite value. It is agreed that the will was executed in 1948 and in January, 1959 the testator’s savings account at the Emigrant Industrial Savings Bank was amended so as to be payable ‘ ‘ in trust for Ronald Ginsburg ’ ’. A savings account at Greenwich Savings Bank was opened in trust for Ronald Ginsburg in 1957. All of the United States Savings Bonds, held jointly with the nephew or payable on death to him, were acquired after the execution of the will and, subsequent to 1948, he was designated beneficiary of some of the insurance policies involved herein. The testator died in August, 1959.
The general rule of construction is that a will speaks as of the time of the testator’s death and, while this general rule is subordinate to the master rule that the intention of the testator always governs, no basis exists for finding that this testator had a special intent (cf. Matter of Rothschild, 161 Misc. 888; Matter of Hulse, 190 Misc. 6). The conclusion that the will speaks as of the time of the testator’s death does not create any presumption that, in placing any property or indicia of property in his safe or safe-desposit box, the testator intended the physical situs of such property to alter or to extinguish existing legal rights of any person in such property. Insofar as the Totten Trust accounts are concerned, the nephew was the beneficiary of a tentative trust in the testator’s lifetime and, while such interest could have been revoked by a will, the will of the testator does not explicitly indicate such an intention. The opening of the trust accounts and the investments in Government bonds were made subsequent to the date of the will and it is beyond contradiction that the initial purpose of the testator in depositing and investing his money was to provide benefits to his nephew. The legal significance of a Totten Trust, as first set forth in Matter of Totten (179 N. Y. 112) and later definitively fixed by the Banking Law (§ 239), is so firmly established, even in the mind of the layman, as to require convincing evidence of an intention to revoke the legal relationship created by the form of the bank account. The same thinking is appropriate in respect of the United States Savings Bonds. The mere putting of the passbooks and .the bonds in a place of *589 safekeeping does not appear to constitute a reliable basis for assuming that the testator wished this act to be construed as a complete change of heart toward his nephew.
There is no reason to take a different view as to the insurance policies, particularly since any argument that an effective change of beneficiary was accomplished would find little acceptance in the decisions (Ralph v. Equitable Life Assur. Soc., 46 N. Y. S. 2d 957 and cases there cited). It is-found that the trust bank accounts, the insurance policies and the savings bonds are the property of the nephew.
A statement of stockbrokers, found in the decedent’s safe at his office, is without significance inasmuch as the statement was a mere communication of information and the possession of this paper would impart to its holder no legal right to claim the property listed thereon. The cash balance in the brokerage account and the stock held by the broker are to be included in the residuary estate. The certificates of stock found in the safe with the testator’s name indorsed thereon belong to the specific legatee of the safe’s contents along with all other cash and property found therein. The contents of the three rooms consisting of decedent’s dental office belong to the specific legatee while the contents of the connecting hallway form part of the residuary estate. This conclusion as to the property in the hallway is reached because the gift of the contents of the dental office cannot be extended to the portion of the apartment which was not essential for the use of the professional office.
Submit decree on notice consolidating the two proceedings, directing delivery of personal property to the nephew and construing the will in accordance with this opinion.